Present: Hassell, C.J., Lacy, Keenan, Koontz, Kinser, and
Lemons, JJ., and Russell, S.J.

WENDELL W. JOHNSTON, ET AL.         OPINION BY
 SENIOR JUSTICE CHARLES S. RUSSELL
    v.  Record No. 050376       January 13, 2006

FIRST UNION NATIONAL BANK,
n/k/a WACHOVIA BANK, NATIONAL ASSOCIATION, ET AL.

FROM THE CIRCUIT COURT OF GILES COUNTY
Brett L. Geisler, Judge

This appeal presents the question whether a debtor,
presenting a check marked "Acc't. Paid in full" that was
accepted by the creditor and not refunded, accomplished a
discharge of the debt by an accord and satisfaction.  It
involves the application of Code § 8.3A-311 to the facts of
the case.

*Facts*

The essential facts are undisputed.  In 1985, Wendell W.
Johnston and Hallie M. Johnston, husband and wife, purchased
real property in Giles County.  They executed a deed of trust
securing a loan in the amount of $32,385.20 with a fixed rate
of 13.75% interest, evidenced by a note payable to Dominion
Bank, National Association, the predecessor of First Union
National Bank, now known as Wachovia Bank (collectively, the
Bank).  The note provided for repayment in 180 equal monthly
installments of $428.30.  Wendell Johnston was "working . . .
two jobs" and Mrs. Johnston stayed at home to care for an

invalid grandson. She made the monthly payments due on the Bank's note, but sometimes the payments were late. The Bank had given her a coupon book at the outset of the loan that she relied on to keep track of her payments. Each coupon was marked with the due date, the amount of the monthly payment and the amount of a "late charge" that would fall due if the payment were more than seven days late. She attached the coupons to each payment she made. When a payment was late, she added the "late charge" to her payment. She believed that this kept her account current and that the principal was declining as shown on the Bank's amortization schedule.

In 1999, Mrs. Johnston noticed a discrepancy between the principal balance remaining on the loan as shown on a statement received from the Bank and the much lower balance shown by her own records. Because she had made all payments at the Pearisburg branch of the Bank, she brought the matter to the attention of Lester Tickle, who was then the manager of that branch. He requested the Bank's office in Roanoke to send the Johnstons a "history of her payments." When Mrs. Johnston received such a document from the Bank, it did nothing to answer her questions. She testified that "there was no explanation for that large amount." [1]

_____

[1] This document, captioned "Transaction History," was made an exhibit at trial. It is a computer-generated record only of

2

Unable to understand the basis of the Bank's claim, Mrs. Johnston prevailed upon her sister, Laura Jane Cook, who had a degree in accounting, to go to the Bank and discuss the matter with Mr. Tickle. He told Mrs. Cook that the discrepancy was due to "extra interest charges on her late payments, and two extended payments."[2] Mrs. Cook testified: "There seemed to be a lot of things that didn't, I didn't think matched up . . . . It was very confusing the way the bank had . . . allotted her payments." Mrs. Johnston, who was unable to leave her disabled grandchild, also asked her husband's cousin, Marie Johnston, who had worked at the Bank for 45 years and who knew Mr. Tickle, to go to the Bank to try to resolve the problem. Mr. Tickle told her that he would like to help but "it was out of his hands."

On April 28, 2000, Mrs. Johnston went to the Pearisburg branch of the Bank in person and was waited on by Vickie Lucas, a teller. At that time, the Johnstons had two outstanding loans due the Bank, the mortgage loan that was the subject of this dispute and an "equity loan." Mrs. Johnston told the teller: "I would like to pay my accounts off in full

payments on the loan received by the Bank from June 25, 1993 through April 28, 2000 and shows no principal balance remaining on the loan at any time.

[2] Mrs. Johnston denied that there were ever any extended payments.

and I would have to pay . . . off the [equity loan] with a credit card and the other one I would pay by check." There were two coupons remaining in her mortgage loan coupon book, representing the last two payments due. Mrs. Johnston wrote out a check for $856.60, the sum of the last two payments as shown on the coupons and wrote the loan number on the check followed by the notation: "Acc't. Paid in full." She laid the coupon books for both loans on the counter before the teller and gave the teller her check and her credit card. The teller checked the account numbers for both loans, checked her computer for the amount due on the equity loan, called the credit card company to be sure a payment of the required amount would be honored, and accepted both the credit card payment and the check. The Bank never refunded the amount of the check to the Johnstons. It was deposited to the Bank's account and returned to the Johnstons, cancelled.

From April until August 2000, the Bank did nothing to inform the Johnstons that their mortgage loan had not been repaid in full. A "Certificate of Satisfaction" was mailed to them evidencing repayment of the equity loan, but no such evidence of payment ever arrived with respect to the mortgage loan. Instead, they received a "paper . . . saying that [we] owed a large amount of money." In October 2000 they received in the mail a "Notice of Intention to Foreclose" from the

4

Bank's office in Jacksonville, Florida.  On December 29, 2000, a vice-president of the Bank executed an affidavit in Philadelphia, Pennsylvania, to the effect that the Johnstons' original note had been lost or misplaced but that the principal amount due the Bank on the loan was $5,612.05, plus $521.15 in interest and $85.64 in late charges, with further interest accruing at the rate of $2.11 per day from November 20, 2000.  In March 2001, a substitute trustee appointed by the Bank sold the Johnstons' property at a foreclosure sale at which the Bank became the successful bidder.[3]

*Proceedings*

The Johnstons brought this suit against the Bank seeking a judicial determination that the mortgage loan had been fully paid and discharged, and other relief.  The circuit court heard the evidence ore tenus.

Although the note had been lost, the Bank produced a "Customer Loan and Security Agreement" at trial, which the Johnstons had signed in 1985, stating that the number of payments would be 180, that each payment would be $428.30, and that the payments would be due "monthly beginning June 1,

---

[3] The circuit court's final decree in this case set aside the sale and the trustee's deed to the Bank because of violations of duties owed by the Bank and by the trustee to the Johnstons.  By order entered this day, we have affirmed that part of the circuit court's decree.

5

1985."  The agreement further provided that the principal of the loan was to be $32,385.20 and "[s]tarting on the date of this Agreement, simple interest is charged on the unpaid part of your loan at the yearly rate of 13.75% (the 'Note Rate'). Interest is figured counting the actual number of days in each month and using a 365-day or 366-day (as applicable) year." The Bank also offered in evidence a loan recalculation, showing receipt of all payments and how they had been applied to principal, interest and "late payments."  There was no contention, however, that these calculations had ever been divulged to the Johnstons.

The circuit court, in a letter opinion, held that Mrs. Johnston had not acted in good faith in tendering a "paid in full" check to the Bank's teller, and that as a result, no accord and satisfaction had occurred.  The court reasoned that good faith would have required Mrs. Johnston to tender her check directly to Mr. Tickle, the one person in the Bank she knew to have knowledge of the dispute concerning the debt, or to have informed the teller that the amount due was disputed.[4] The court also found that the terms of the loan were unambiguous, that the Bank's recalculation was correct and

---

[4] The U.C.C. defines "Good Faith" as "honesty in fact and the observance of reasonable commercial standards of fair dealing."  Code § 8.3A-103(4).

6

that the unpaid balance was due as claimed by the Bank.  The

court entered a final decree in accordance with that ruling

and we granted the Johnstons an appeal.

*Analysis*

In 1992, the General Assembly adopted amendments to the

Uniform Commercial Code that included Code § 8.3A-311, a

provision intended to govern the specific situation presented

by this appeal.[5]  That section provides:

> **§ 8.3A-311.  Accord and satisfaction by use of
> instrument.** – (a) If a person against whom a claim
> is asserted proves that (i) that person in good
> faith tendered an instrument to the claimant as full
> satisfaction of the claim, (ii) the amount of the
> claim was unliquidated or subject to a bona fide
> dispute, and (iii) the claimant obtained payment of
> the instrument, the following subsections apply.
>     (b) Unless subsection (c) applies, the claim is
> discharged if the person against whom the claim is
> asserted proves that the instrument or an
> accompanying written communication contained a
> conspicuous statement to the effect that the
> instrument was tendered as full satisfaction of the
> claim.

---

[5] The circuit court's opinion relied, in part, on Code
§ 11-12, which provides, in pertinent part:  "Part performance
of an obligation . . . when expressly accepted by the creditor
in satisfaction and rendered in pursuance of an agreement for
that purpose . . . shall extinguish such obligation . . . ."
We find that section inapplicable to the facts of this case
because it is premised upon an express acceptance of part
payment by the creditor, coupled with an agreement between the
parties that such acceptance will be in full satisfaction of
the obligation.  The present case is governed entirely by the
provisions contained in the U.C.C., hereinafter stated, which
apply even in cases where an accord and satisfaction may arise
through inadvertence on the creditor's part.

(c) Subject to subsection (d), a claim is not discharged under subsection (b) if either of the following applies:

(1) The claimant, if an organization, proves that (i) within a reasonable time before the tender, the claimant sent a conspicuous statement to the person against whom the claim is asserted that communications concerning disputed debts, including an instrument tendered as full satisfaction of a debt, are to be sent to a designated person, office, or place, and (ii) the instrument or accompanying communication was not received by that designated person, office, or place.

(2) The claimant, whether or not an organization, proves that within ninety days after payment of the instrument, the claimant tendered repayment of the amount of the instrument to the person against whom the claim is asserted. This paragraph does not apply if the claimant is an organization that sent a statement complying with paragraph (1)(i).

(d) A claim is discharged if the person against whom the claim is asserted proves that within a reasonable time before collection of the instrument was initiated, the claimant, or an agent of the claimant having direct responsibility with respect to the disputed obligation, knew that the instrument was tendered in full satisfaction of the claim.

The foregoing section is inapplicable if the debtor is not acting in good faith when presenting the instrument or if the claim is liquidated and not subject to a bona fide dispute. If the requirements of sections (a) and (b) are met, however, an accord and satisfaction is presumed. Gelles & Sons Gen. Contr. v. Jeffrey Stack, Inc., 264 Va. 285, 290, 569 S.E.2d 406, 408 (2002).

We find no evidence in the record to support the circuit court's finding that Mrs. Johnston was not acting in good

8

faith when she presented her "paid in full" check.  She presented her check to a teller, to whom such payments were regularly made, clearly informing her that she wished to pay her loans in full, and laid her payment books before the teller.  Her check was plainly marked "paid in full."  We find no support in the evidence for the circuit court's conclusion that, in dealing directly with the teller in this manner, she failed to exercise good faith as defined by Code § 8.3A-103(4).  The circuit court's opinion stated:  "[Mrs. Johnston] tendered her check not to Mr. Tickle, the one person with an intelligent appreciation of the possible consequences of the pay off, but to a bank teller, Mrs. Lucas. . . .  I find that the teller did not have all the relevant facts regarding this dispute. . . ."  The circuit court's conclusion that the teller lacked "the relevant facts" could only have been based upon conjecture.

Further, the evidence fails to support the circuit court's finding that Mr. Tickle was the "one person with an intelligent appreciation" of the situation.  Mr. Tickle's testimony was that he had only one conversation with Mrs. Johnston, that the facts relating to the balance due on the loan were not available to him in the local branch, but that he would ask the Bank's Roanoke office to mail a statement to her.  He said:  "That is what I think I remember doing for

9

her."  When he was shown at trial the confusing and incomplete statement the Roanoke office actually sent to the Johnstons at his request, he said, "I don't know that much about the form. The only thing we do is request it."  Mrs. Johnston firmly believed that if she made 180 payments of $428.30 and added the required "late charges" to any late payments, as shown by the coupons in her payment book, the loan would be paid in full.  She testified to that belief at trial and informed the Bank of it in her contacts with the branch manager.  The record contains no evidence to support an inference that she knew better and was dissembling.[6]

The original note was lost and its precise language could not be determined.  The Bank's claim was based entirely upon the surmise that the note was worded in strict accordance with the "Customer Loan and Security Agreement" that had preceded the note.  Mrs. Johnston may well have been mistaken as a matter of law, as the circuit court found, but an error of law is not equivalent to bad faith.[7]  It follows that the amount

---

[6] In Gelles, the trial court found it significant that the debtor believed that the amount of the check it tendered in final payment of a disputed account represented the proper accounting of the amount due. 264 Va. at 291, 569 S.E.2d at 408.  We affirmed the trial court's judgment.

[7] See DeChene v. Smallwood, 226 Va. 475, 480, 311 S.E.2d 749, 751 (1984) (police officer acting under a mistaken belief as to the effect of a law nevertheless acted in good faith).

10

due was subject to a bona fide dispute, not a fraudulent or frivolous one, even though the Bank might ultimately have prevailed if it had sought to recover the balance without accepting a "paid in full" check.

As we observed in Gelles, subsection (c) of the statute is designed to protect a creditor from inadvertent acceptance of an accord and satisfaction. It offers the creditor two alternatives consistent with modern business practices. See Code § 8.3A-311 cmts. 5-6. First, the creditor, if an organization, may send a statement to the debtor to the effect that any communication regarding a disputed debt be sent to a designated person, office, or place. Code § 8.3A-311(c)(1). The Bank failed to take advantage of that protection. Second, the Bank might have avoided the risk of an accord and satisfaction entirely if it had tendered repayment of the amount of Mrs. Johnston's check within 90 days of its payment. Code § 8.3A-311(c)(2). By retaining her payment beyond 90 days, the Bank failed to avail itself of that protection.

*Conclusion*

Mrs. Johnston had the initial burden of producing evidence that she acted in good faith when she presented her "paid in full" check to the teller. We hold that she carried that burden, that the burden then shifted to the Bank to go forward with evidence to rebut her showing of good faith, and

11

that the Bank failed to do so.  The evidence also showed that the amount of the claim was subject to a bona fide dispute, for the reasons stated above.  As a result, the provisions of subsection (b) of Code § 8.3A-311 took effect and the debt was discharged.  Accordingly, we will reverse that part of the circuit court's decree that was the subject of this appeal and enter final judgment here in favor of the Johnstons.

<u>Reversed in part and final judgment</u>.

JUSTICE KEENAN, with whom JUSTICE KOONTZ and JUSTICE LEMONS join, dissenting.

I respectfully dissent.  I would hold that the trial court's decision is not plainly wrong or without evidentiary support under the standard of review set forth in Code § 8.01-680, which governs our consideration of this appeal.

I think that the majority has reached a contrary result for two reasons.  First, in my view, the majority has confused the requirement of a "good faith" tender in Code § 8.3A-311 with the separate statutory element of a "bona fide dispute." Second, I think that the majority has misapplied the burden of proof in this case.

The statutory elements of a "good faith" tender and a "bona fide dispute" are separate and distinct.  Under the plain language of the statute, the requirement of a "good faith" tender addresses the method and manner in which payment

12

is offered in satisfaction of a debt, while the statutory element of a "bona fide dispute" concerns the amount of the debt itself.  See Webb Bus. Promotions, Inc. v. American Elec. & Entm't Corp., 617 N.W.2d 67, 73 (Minn. 2000) (focus of "good faith" inquiry under UCC is on offer of accord, not on parties' underlying contract); accord Ex parte Meztista, 845 So.2d 795, 799 (Ala. 2001).  Despite the fact that these statutory elements are entirely different components of an accord and satisfaction under the Uniform Commercial Code, the majority heavily relies on evidence of a "bona fide dispute" in discarding the trial court's finding that Mrs. Johnston did not act in "good faith" when she tendered payment to the Bank.  Further, the majority rejects the trial court's finding without engaging in an analysis of the "good faith" tender requirement under the UCC.

"Good faith" under the UCC is defined in Code § 8.3A-103(a)(4) as "honesty in fact and the observance of reasonable commercial standards of fair dealing."  The party alleging an accord and satisfaction under the UCC bears the burden of proving a "good faith" tender, as well as the other elements necessary to support the claim.  Code § 8.3A-311; McMahon Food Corp. v. Burger Dairy Co., 103 F.3d 1307, 1313 (7th Cir. 1996); Webb Bus. Promotions, Inc., 617 N.W.2d at 74.

13

A trial court's finding on the issue of "good faith" is a finding of fact.  McMahon Food Corp., 103 F.3d at 1313.  Thus, that finding may not be disturbed on appeal unless it is without evidence to support it.  Code § 8.01-680.

"The meaning of 'fair dealing' will depend upon the facts in the particular case."  Code § 8.3A-311, cmt. 4.  Those facts include the parties' prior course of dealings.  Sarah H. Jenkins, 13 Corbin on Contracts § 70.8, at 354-55 (Joseph M. Perillo, ed., rev. ed. 2003).  Moreover, "fair dealing excludes engaging in opportunistic behavior."  Id. at 356.

In the present case, the trial court found that Mrs. Johnston had dealt exclusively with the Pearisburg branch manager, Mr. Tickle, in contesting the amount of her loan balance.  The court further found that Mr. Tickle had "full knowledge of the dispute," and was the "one person" whom Mrs. Johnston knew had "an intelligent appreciation of the possible consequences of the pay off."  The court additionally found that despite the many prior dealings with Mr. Tickle by Mrs. Johnston and others acting at her request, she did not approach Mr. Tickle with her check or inform the Bank's teller, Vickie Lucas, of the longstanding dispute with Mr. Tickle concerning the loan balance.

Based on these factual findings, the trial court concluded that the exercise of "good faith" would have

"required Mrs. Johnston to inform the teller of the dispute and her [negotiations] with Lester Tickle or to have tendered the final payment to Mr. Tickle himself."  I agree, and would hold that the trial court's factual findings support its conclusion that reasonable commercial standards of fair dealing required that Mrs. Johnston tender payment to a person who was aware of her dispute with the Bank, rather than to a person who lacked any information or appreciation of that dispute.

The majority acknowledges Mrs. Johnston's burden of proving the statutory requirement of "good faith" but ultimately misapplies that burden in its review of the evidence.  In doing so, the majority also fails to consider one component of the "good faith" requirement, namely, whether Mrs. Johnston met her burden of proving that her conduct was commercially reasonable.

In its analysis, the majority instead characterizes the circuit court's finding that Vicki Lewis had no knowledge of Mrs. Johnston's ongoing dispute as conjecture.  However, Mrs. Johnston, not the Bank, bore the evidentiary burden on this issue.  Thus, the majority's argument that there was an absence of evidence to support the circuit court's factual findings is of no consequence here.  The circuit court's ultimate conclusion that Mrs. Johnston did not prove she acted

15

in good faith is justified by the complete lack of evidence that she acted in a commercially reasonable manner.

In addition, the majority's analysis is devoid of any explanation why Mrs. Johnston's actions were commercially reasonable when she failed to inform Vicki Lewis of her unresolved dispute with the Bank. In my opinion, the facially opportunistic nature of her tender, in conjunction with her failure to prove the commercial reasonableness of her actions, compels a conclusion that she did not prove that she made a "good faith" tender.

Mrs. Johnston's failure to prove that she acted in "good faith" was fatal to her claim of accord and satisfaction. See Code § 8.3A-311. Thus, it is irrelevant that the Bank could have employed remedies provided in subsection (c) of the statute to protect the Bank from an inadvertent acceptance of an accord and satisfaction. Once Mrs. Johnston's claim of accord and satisfaction failed for lack of proof, there was no accord and satisfaction that the Bank could have accepted, inadvertently or otherwise.

Beyond the outcome of the present case, I also am concerned that the majority's holding weakens the statutory requirement of "good faith." The majority's relaxed application of the "good faith" tender requirement appears to permit a court to base its judgment on subjective and

16

sympathetic considerations, such as a debtor's "firm belief," instead of the objective test of "good faith" defined in Code § 8.3A-103(a)(4). Thus, under the majority's approach, a debtor may engage in opportunistic behavior in tendering payment on a debt of a disputed amount, as long as she is not manifestly dishonest and strongly believes that her position regarding the underlying dispute is correct.

This type of analytical focus will certainly create confusion in the resolution of disputes involving both institutional and individual transactions. As a result, debtors may be encouraged to try to "short-circuit" their contractual obligations by asserting a "firm belief" in the proper amount of their remaining debt and by tendering "payment in full" to the person least likely to have knowledge of a particular dispute. Such conduct will have a negative impact on a very broad spectrum of commercial transactions in this Commonwealth. Thus, in accordance with the trial court's factual findings and Mrs. Johnston's failure to meet her burden of proof under Code § 8.3A-311, I would affirm the trial court's judgment.