UNPUBLISHED

COURT OF APPEALS OF VIRGINIA

Present:    Judges AtLee, Friedman and Callins
Argued by videoconference


DOMONIQ ZURIEL BOOKER

                                                    MEMORANDUM OPINION[*] BY
v.         Record No. 1389-23-2                     JUDGE RICHARD Y. ATLEE, JR.
                                                    SEPTEMBER 24, 2024
COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF BUCKINGHAM COUNTY
Donald C. Blessing, Judge

James T. Maloney (James T. Maloney, PC, on brief), for appellant.

Tanner M. Russo, Assistant Attorney General (Jason S. Miyares,
Attorney General, on brief), for appellee.


The trial court convicted Domoniq Zuriel Booker of rape under a written plea agreement.

On appeal, Booker argues that the trial court erred by denying his motion to withdraw his *Alford*[1]

guilty plea before sentencing.  For the following reasons, we affirm the trial court's judgment.

I. BACKGROUND

"In accordance with familiar principles of appellate review, the facts will be stated in the

light most favorable to the Commonwealth, the prevailing party at trial." *Poole v.*

*Commonwealth*, 73 Va. App. 357, 360 (2021) (quoting *Gerald v. Commonwealth*, 295 Va. 469,

472 (2018)).  In doing so, we discard any of appellant's conflicting evidence, and regard as true

all credible evidence favorable to the Commonwealth and all inferences that may reasonably be

drawn from that evidence.  *Gerald*, 295 Va. at 473.

---

[*] This opinion is not designated for publication.  *See* Code § 17.1-413(A).

[1] *North Carolina v. Alford*, 400 U.S. 25 (1970).

In April 2021, a grand jury indicted Booker on 2 counts of rape of a child under age 13, 3 counts of aggravated sexual battery of a child under age 13, and forcible sodomy of a child under age 13 by a person over the age of 18. On the morning of Booker's scheduled trial, Booker's counsel arrived late because of blocked roads. Counsel asked for time to speak to Booker, which "might help" the parties reach "a resolution." The trial court granted the recess, telling the parties to "come get me" when they were ready. After a 28-minute recess, the trial court reconvened to inform the subpoenaed witnesses that the parties had requested additional time "to work on some issues." The trial court believed the time would be "well spent" and informed the witnesses that they were "not excused." The trial court again left the recess open-ended.

After 35 more minutes of recess, the parties informed the court that they had reached a plea agreement. Booker's counsel proffered that he had two witnesses who were not present; one "could not be found," and the second "was under medical restrictions." Counsel acknowledged that based on earlier proceedings in the case, it was his obligation "to make arrangements" for the second witness to testify if he could not come to court. The trial court stated that it could make the arrangements for the defense if the witness "ha[d] a phone," and the Commonwealth had no objection to that procedure. Booker, however, did not ask the court to act upon that suggestion. Instead, he asked the court to accept the proposed plea agreement.

The plea agreement provided that Booker would enter an *Alford* guilty plea to a single amended indictment charging rape by force. The amended indictment struck any reference to the victim's age, eliminating the mandatory minimum of life incarceration. In addition, the Commonwealth moved to nolle prosequi the remaining charges. Before accepting Booker's plea, the trial court conducted a colloquy with him to ensure it was knowingly and voluntarily entered. The trial court asked whether Booker understood the "matter" and what the

- 2 -

Commonwealth would have to prove to convict him of rape. When Booker stated that he did not understand, the trial court again recessed for Booker to confer with counsel.

After about ten minutes, Booker's counsel informed the trial court that he and Booker had "come to an impasse." Counsel proffered that Booker did not "believe" him and had accused him of lying and "only being interested in getting money out of him." Accordingly, counsel moved to withdraw. Booker, in turn, stated that counsel had told him six months earlier that the Commonwealth wanted to dismiss the case. Nevertheless, Booker stated that he would "go forward on this" and denied calling counsel a liar. Booker twice acknowledged that counsel was "prepared for trial" and reiterated that he wanted to "go on with it."

The trial court reminded Booker of the case's extensive pre-trial litigation, which had resulted in favorable rulings for Booker, and Booker again stated that he wanted his counsel to "continue." The trial court asked Booker how counsel could proceed given the rift between them, and Booker responded, "I'm asking him certain questions for certain things and I'm not receiving them. I'm really not. What else can I say?" Booker's counsel persisted in his motion to withdraw, however, asserting that although Booker claimed he wants to "go forward," he might change his mind after he returned to the jail. The Commonwealth opposed the motion to withdraw, noting that Booker had relieved another attorney a year earlier, that his present counsel had "worked hard" on the case for about a year, and that the child victim needed resolution.

After a brief recess, the trial court denied counsel's motion to withdraw. The court found that Booker explicitly had asked for counsel to continue representing him and that counsel was prepared for trial and had submitted an alibi defense. Booker's counsel then proffered that during the brief recess, Booker reiterated his desire for counsel "to proceed with representing him."

The trial court restarted the plea colloquy, and Booker confirmed that he understood the charge and what the Commonwealth would have to prove to sustain a conviction. Booker stated that he had had enough time to talk with his counsel about possible defenses and his plea. After that discussion, Booker decided to enter an *Alford* plea, understanding that it was a "guilty plea." Booker acknowledged that his plea waived certain constitutional rights, including the rights to remain silent, confront witnesses, and appeal certain decisions. Booker asserted that he was entering his plea "freely and voluntarily" because "the evidence" was sufficient to "find that [he was] guilty."

Booker acknowledged that the plea agreement provided that he would be sentenced to 60 years' incarceration with 50 years suspended and that the trial court could accept the agreement, reject it, or postpone the decision until after receiving a presentence report. Booker represented his understanding that if the court accepted the agreement, it would sentence him according to its terms, and if the court rejected the agreement, he was not bound by the agreement or his plea. Likewise, nobody had promised Booker anything outside of the plea agreement. Booker expressed satisfaction with his counsel's services and asked the court to accept the plea agreement. He declined the opportunity to ask the trial court any questions.

The Commonwealth proffered that between March 1, 2020, and November 30, 2020, Booker had "sexual intercourse with a young lady . . . in Buckingham County and that the intercourse was by force or threat." Booker indicated he understood the proffer and confirmed that he was pleading guilty because he did not want to risk a guilty verdict at trial. The trial court found that Booker "intelligently concluded that it [was] in his best interests to enter" an *Alford* plea. Further, the court found that Booker had tendered his plea "freely, intelligently and voluntarily" with an understanding of its consequences and the nature of the charge. The court

noted that Booker was satisfied with his attorney and understood "the process." Accordingly, the court accepted his guilty plea, convicted him of rape, and continued the matter for sentencing.

Eleven days later, Booker's counsel again moved to withdraw due to "[i]rreconcilable differences." The motion stated that Booker had "fired" his counsel and "already retained another attorney." Booker's newly retained counsel contemporaneously moved to substitute counsel. The trial court granted the motions.

On July 14, 2023, Booker moved to withdraw his *Alford* plea. He argued that the court had not accepted his "full plea" and instead continued the matter pending a presentence investigation report. He contended that he should be allowed to withdraw his plea because the court had not yet accepted the plea agreement. He maintained that his motion to withdraw was made in good faith, pointing to the "last-minute nature" of the plea colloquy and his equivocal statements during the plea colloquy that he did not understand the charge and had not received all information he asked for from his then counsel. He insisted that it was "a last-minute courthouse steps type of plea" and that he agreed for his prior counsel to continue representing him only because he believed (albeit mistakenly) that his only other option was to proceed without counsel. Those circumstances supposedly demonstrated that his plea was the product of "coercion and undue influence."

Next, Booker asserted that he had a valid defense because the Commonwealth's evidence was weak and the child victim's testimony was not credible.[2] He also asserted that he intended to call "several witnesses" in support of his alibi defense. Finally, he maintained that the Commonwealth would suffer no prejudice because it could reinstate the original charges and its witnesses "remain[ed] local."

---

[2] Booker had moved to suppress the victim's identification of him as the perpetrator; even though the trial court denied the pretrial motion, Booker argued the motion demonstrated that the victim's testimony was subject to impeachment.

The trial court denied the motion. The court reviewed its record and found that it had unequivocally accepted Booker's plea and convicted him of rape, while continuing the proceedings before deciding whether to accept the plea agreement. It further found that even though Booker's then counsel arrived late for the scheduled trial, the court had recessed multiple times to provide him with sufficient opportunity to talk to Booker. The court emphasized that it would have allowed Booker's witness to testify via telephone and that Booker repeatedly had stated he wanted the lawyer to continue representing him. Thus, the court concluded that the totality of the circumstances demonstrated no "honest mistake," fraud, coercion, or undue influence; rather, Booker decided to plead guilty after ample time to discuss the matter with his attorney. The court also expressed concern that the delayed trial would prejudice the Commonwealth's case, which relied on a "child victim" who could become "more hesitant" with the passage of time. After further proceedings, the court accepted the plea agreement and sentenced Booker according to its terms. Booker now appeals.

## II. ANALYSIS

Booker argues that the trial court erred by denying his motion to withdraw his plea. He contends that both his plea and his motion to withdraw the plea were made in good faith, he had a "viable defense," and the Commonwealth would not be prejudiced because the original charges could be reinstated, its witnesses were alive, and those witnesses "remained local to the jurisdiction." We disagree.

"The decision whether to allow a defendant to withdraw his plea 'rests within the sound discretion of the trial court and is to be determined by the facts and circumstances of each case.'" *Spencer v. Commonwealth*, 68 Va. App. 183, 186 (2017) (quoting *Parris v. Commonwealth*, 189 Va. 321, 324 (1949)). The trial court's ruling should be reversed "only upon 'clear evidence that [the decision] was not judicially sound.'" *Id.* (alteration in original) (quoting *Jefferson v.*

*Commonwealth*, 27 Va. App. 477, 488 (1988)).  That standard of review presupposes "that, for some decisions, conscientious jurists could reach different conclusions based on exactly the same facts—yet still remain entirely reasonable." *Thomas v. Commonwealth*, 62 Va. App. 104, 111 (2013) (quoting *Hamad v. Hamad*, 61 Va. App. 593, 607 (2013)).  "Only when reasonable jurists could not differ can we say an abuse of discretion has occurred." *DeLuca v. Commonwealth*, 73 Va. App. 567, 575 (2021) (quoting *Ramsey v. Commonwealth*, 65 Va. App. 593, 599 (2015)).

Code § 19.2-296 provides:

> A motion to withdraw a plea of guilty . . . may be made only before sentence is imposed or imposition of a sentence is suspended; but to correct manifest injustice, the court within twenty-one days after entry of a final order may set aside the judgment of conviction and permit the defendant to withdraw his plea.

Under that statute, motions to withdraw a guilty plea are governed by two separate standards depending on the timing of the motion.  *Brown v. Commonwealth*, 297 Va. 295, 300 (2019).  "A motion to withdraw a guilty plea made after sentencing is governed by the 'manifest injustice' standard." *Id.* (emphasis omitted).  In contrast, motions made before a defendant is sentenced should be granted if the plea was entered "by mistake or under a misconception of the nature of the charge; through a misunderstanding as to its effect; through fear, fraud, or official misrepresentation; was made involuntarily for any reason; or even where it was entered inadvisedly, if any reasonable ground is offered for going to the jury." *Pritchett v. Commonwealth*, 61 Va. App. 777, 786 (2013) (quoting *Parris*, 189 Va. at 325).

To satisfy the "more forgiving" pre-sentence standard, Booker had to meet three requirements.  *Brown*, 297 Va. at 299.  First, he had "the burden of establishing that his motion is made in good faith." *Spencer v. Commonwealth*, 68 Va. App. 183, 187 (2017).  "[B]*oth* the guilty plea and the motion to withdraw the . . . plea must be made in good faith." *Pritchett*, 61 Va. App. at 787.  Second, Booker was required to "proffer evidence of a reasonable basis for

- 7 -

contesting guilt." *Spencer*, 68 Va. App. at 187. The proffered defense must be "'substantive' and 'reasonable,' not 'merely dilatory or formal.'" *Id.* at 187-88 (quoting *Justus v. Commonwealth*, 274 Va. 143, 155-56 (2007)). Finally, the trial court also may consider whether the Commonwealth would be prejudiced by the granting of the motion. *Pritchett*, 61 Va. App. at 787. "The first requirement protects the integrity of the judicial process by precluding defendants from using a guilty plea as a subterfuge to manipulate the court," *Cobbins v. Commonwealth*, 53 Va. App. 28, 34 (2008), and it is dispositive here.

The trial court found that Booker's motion was "frivolous," "unwarranted," and "unfounded," obviously concluding that Booker was not acting in good faith. "A trial court's finding on the issue of 'good faith' is a finding of fact.'" *Branch v. Commonwealth*, 60 Va. App. 540, 547-48 (2012) (quoting *Johnston v. First Union Nat'l Bank*, 271 Va. 239, 248 (2006)). We defer to that finding unless it is "'plainly wrong' or without evidence to support" it. *Id.* at 548 (quoting *McGee v. Commonwealth*, 25 Va. App. 193, 198 (1997) (en banc)). There is nothing in the record to demonstrate that the trial court's factual finding was plainly wrong, or that it abused its discretion in denying the motion to withdraw the plea. Booker has failed to demonstrate that his motion to withdraw his plea was made in good faith.

To begin, Booker improperly conflates his plea with the plea agreement in arguing that he "retained" the right to withdraw his plea because the trial court did not immediately accept the plea agreement. An *Alford* plea is a type of guilty plea that permits a defendant to maintain his innocence while admitting that sufficient evidence exists to convict him. *Zebbs v. Commonwealth*, 66 Va. App. 368, 379 (2016); *Ramsey*, 65 Va. App. at 596 n.1. By contrast, a plea agreement is a contract between the defendant and the Commonwealth under which the Commonwealth agrees to take certain actions in exchange for a guilty plea. *Griffin v. Commonwealth*, 65 Va. App. 714, 718 (2016). The trial court's decisions regarding whether to

accept a guilty plea and whether to accept a plea agreement under the totality of the circumstances are discrete matters. Rule 3A:8(b) and (c).

Rule 3A:8(c) highlights some of the distinctions between a plea and a plea agreement. In particular, it provides that when, as in this case, a plea agreement contains a "specific sentence," a defendant has the "right to withdraw his plea" *if* the trial court "rejects the plea agreement." Rule 3A:8(c)(4). The rule, however, does not provide a "right" to withdraw the plea after it is accepted but before the trial court decides whether to accept the plea agreement. *Id.* Moreover, the record demonstrates that the trial court thoroughly explained that distinction to Booker. The court stated that if it accepted the plea agreement, Booker and the court would be bound by its terms, and by contrast, if the court rejected the agreement, Booker would not be "bound [by his] guilty plea." The court then accepted Booker's plea, convicted him of rape, and continued the matter to later determine whether to accept the plea agreement. Thus, nothing in the law or the record reasonably supports Booker's argument that by postponing acceptance of the plea agreement, the trial court conveyed that Booker was "retaining his right to withdraw [his] plea until the next hearing." On the contrary, the trial court merely explained that Booker could withdraw his plea *if* the court rejected the plea agreement, which it did not do.

The record also belies Booker's contentions that he did not understand the proceedings and entered his plea unadvisedly due to a breakdown of communications and after a rushed discussion with his attorney. The trial court correctly noted that although Booker's then-counsel arrived late for the scheduled trial, the court recessed multiple times to provide Booker with sufficient opportunity to talk to his counsel. The first recess was open-ended and ultimately lasted for nearly 30 minutes. The parties then informed the court that they needed more time to "work on some issues that [had] arisen," so the court permitted another open-ended recess that lasted for 35 minutes. Indeed, in both instances, the record demonstrates that the trial judge reconvened only

after the parties informed it that they were ready. After the second recess, the parties presented a plea agreement to the court, and Booker entered an *Alford* plea. When Booker demonstrated confusion during the ensuing plea colloquy, however, the trial court recessed for a third time to provide him more time to discuss the proceeding and nature of the amended charge with his counsel. Thus, the trial court afforded Booker repeated opportunities to speak with his attorney about his plea without imposing any limits or otherwise hurrying the discussion.

Upon returning from the third recess, Booker's counsel moved to withdraw. Booker asserted that he was not satisfied with the plea agreement because he believed, based on his counsel's alleged statement from six months earlier, that the Commonwealth intended to dismiss the entire case. Booker, however, could not reasonably have believed that the Commonwealth intended to do so because the matter was set for a trial when Booker entered his plea. Moreover, Booker's statement that he believed the Commonwealth wanted to dismiss the case nonetheless fails to show that his pleas were "entered by mistake or under a misconception of the nature of the charge." *Branch*, 60 Va. App. at 548. In fact, it demonstrates the opposite: he fully understood that by entering his plea that the charge would not be dismissed, contrary to his claim. Rather, under the plea agreement, the court would sentence him to ten years' active incarceration. Plainly, the alternative was for Booker to risk a trial on a charge that carried a mandatory term of life imprisonment. *See* Code § 18.2-67.1(B)(2). Indeed, even after his counsel moved to withdraw, Booker explicitly asked the court to proceed with both his counsel and the plea agreement. *See Branch*, 60 Va. App. at 548 (holding that a defendant failed to establish that his motion to withdraw his guilty plea was in good faith when he claimed that he had entered his pleas "under pressure, because his prior attorneys told him that if [he] didn't take the plea, that [he] would get forty years" (alterations in original)).

Finally, we reject Booker's argument that he involuntarily entered his pleas because he believed that if his counsel withdrew, he would have to proceed "without counsel." Nothing in the record supports that conclusory contention. Rather, one year earlier, Booker hired the counsel who represented him at the plea hearing, and that came after he had already fired his first attorney. And within two weeks of the plea hearing, Booker fired his second attorney and hired a third attorney to represent him. Thus, Booker's experience in relieving and retaining counsel undermines any claim that he was coerced into entering his pleas to avoid having to proceed to trial *pro se*.

### III. CONCLUSION

The record demonstrates that Booker had sufficient time to discuss his case with his attorney and thoroughly understood the nature of the proceedings and consequences of his plea. Moreover, Booker has failed to identify any circumstances demonstrating that he entered his plea unadvisedly, involuntarily, or under a mistake. Accordingly, the trial court did not abuse its discretion by denying appellant's motion to withdraw his pleas because appellant has not demonstrated that his motion was made in good faith.[3] Thus, the trial court's judgment is affirmed.

*Affirmed.*

---

[3] Given our finding, we need not address whether Booker proffered a viable defense justifying a trial on the merits, or whether the Commonwealth would have been prejudiced had the motion been granted. *See Butcher v. Commonwealth*, 298 Va. 392, 396 (2020) (noting that "the doctrine of judicial restraint dictates that we decide cases 'on the best and narrowest grounds available'" (quoting *Commonwealth v. White*, 293 Va. 411, 419 (2017))).