COURT OF APPEALS OF VIRGINIA


Present:  Judges Willis, Annunziata and Senior Judge Coleman[*]
Argued at Richmond, Virginia


THE COUNTRY VINTNER, INC.

OPINION BY

v.    Record No. 0216-00-2        JUDGE ROSEMARIE ANNUNZIATA

MARCH 6, 2001

ROSEMOUNT ESTATES, INC. AND
 VIRGINIA ALCOHOLIC BEVERAGE CONTROL BOARD


FROM THE CIRCUIT COURT OF THE CITY OF RICHMOND
Randall G. Johnson, Judge

Timothy M. Kaine (Mark B. Rhoads; Patricia A.
Collins; McCandlish, Kaine & Grant, P.C., on
briefs), for appellant.

C. Torrence Armstrong (Stephen D. Busch;
Joy C. Fuhr; McGuire, Woods, Battle & Boothe,
L.L.P., on brief), for appellee Rosemount
Estates, Inc.

Louis E. Matthews, Jr., Assistant Attorney
General (Mark L. Earley, Attorney General;
Michael K. Jackson, Senior Assistant
Attorney General, on brief), for appellee
Virginia Alcoholic Beverage Control Board.



In 1986, Rosemount Estates, Inc. and The Country Vintner,

Inc. entered into a written distribution agreement ("the

Agreement") which provided that Country Vintner would be the

exclusive wholesale distributor of Rosemount wines in the

---

[*] Judge Coleman participated in the hearing and decision of
this case prior to the effective date of his retirement on
December 31, 2000 and thereafter by his designation as a senior
judge pursuant to Code § 17.1-401.

Commonwealth of Virginia.  In November, 1996, Rosemount gave Country Vintner written notice of Rosemount's intent to terminate the Agreement, claiming Country Vintner had breached the Agreement's provisions.  In December, 1996, Country Vintner filed a complaint with the Alcoholic Beverage Control ("ABC") Board alleging that Rosemount did not have "good cause" under the Virginia Wine Franchise Act, Code § 4.1-406, to terminate the Agreement.  In a final decision dated October 30, 1998, the ABC Board determined that Rosemount had "good cause" to terminate the Agreement and dismissed Country Vintner's complaint.  On appeal from the Board's decision, the Circuit Court for the City of Richmond affirmed the ABC Board's determination, giving rise to this appeal.

The Country Vintner raises eight questions for review, all pertaining to whether Rosemount properly terminated the franchise agreement with Country Vintner.  Specifically, Country Vintner alleges the circuit court erred as a matter of law:  (1) in concluding Rosemount had "good cause" to terminate the Agreement, despite Country Vintner's "unquestioned record of success"; (2) in finding Rosemount's request that Country Vintner alter its marketing structure was a "reasonable requirement"; (3) in finding the provision in the Agreement requiring Country Vintner to "contact all on-premises/off-premises retail licensees within Virginia at

reasonable intervals and to use its best efforts to sell to them the Products in an aggressive, effective, and diligent manner" was a reasonable requirement and that a breach of this provision provided good cause for termination; (4) in concluding the Agreement constituted a sufficient writing to allow Rosemount to impose new distribution requirements on Country Vintner; (5) in finding Country Vintner failed to substantially comply with reasonable and material requirements imposed upon it by Rosemount; (6) in concluding Country Vintner had no reasonable cause or justification for such failure; (7) in finding a material deficiency existed in the franchise relationship for which Country Vintner was responsible; and (8) in failing to impose a requirement of reasonableness in the Agreement. For the reasons that follow, we affirm the circuit court's decision.

## BACKGROUND

On appeal, we will review the evidence, and all reasonable inferences deducible therefrom, in the light most favorable to Rosemount, the party prevailing below. Metro Machine Corp. v. Lamb, 33 Va. App. 187, 191, 532 S.E.2d 338, 338 (2000). So viewed, the evidence establishes that Rosemount and Country Vintner entered into the Agreement in 1986. The Agreement granted Country Vintner the exclusive right to distribute

Rosemount wines in Virginia.[1]  The Agreement further provided,

inter alia, that Country Vintner would "contact all

on-premises/off-premises retail licensees within [Virginia] at

reasonable intervals and use its best efforts to sell to them

[Rosemount wines] in an aggressive, effective and diligent

manner."

Initially, Rosemount communicated sales goals to Country

Vintner on an informal, verbal basis; later, Rosemount provided

annual written goals listing the number of cases of its various

wines that should be sold in Virginia.  The written goals

identified the expected volume of sales but did not specify

particular geographic areas or stores in which the wine should

be sold.

Over the twelve-year period that Country Vintner operated

under the Agreement, it developed an extensive customer base of

restaurants, specialty wine shops, and large retailers for

Rosemount's wines, showing "steady growth" and "success" in

marketing Rosemount wines in Virginia.  However, Country Vintner

failed to distribute Rosemount wines to the large retail grocery

stores in northern Virginia that comprised nearly 68% of the

northern Virginia off-premises retail market.  Of the

approximately 168 retail outlets in northern Virginia, Country

---

[1] Code § 4.1-404 prohibits a winery from entering into a distributorship agreement with more than one wholesaler in a given territory.

Vintner only marketed Rosemount wines to eighteen outlets or approximately 15-22% of the entire retail off-premises market in northern Virginia.  The larger grocery store outlets in northern Virginia are predominantly affiliated with grocery store chains such as Giant, Safeway and Shoppers Food Warehouse.

Beginning in 1993, and continuing until it sent the termination letter in 1996, Rosemount made between fifty and 100 verbal requests of Country Vintner to market Rosemount wines to the major northern Virginia grocery store chains.  Despite Rosemount's marketing requests, Country Vintner only serviced eighteen of the 168 retail outlets in northern Virginia and failed to service the large grocery store chains.  Instead, Country Vintner focused its efforts in the northern portion of Virginia on other types of retail establishments, such as gourmet shops and club stores.

On November 12, 1996, Rosemount provided Country Vintner with ninety-days written notice of Rosemount's intent to terminate the Agreement on February 10, 1997 as a result of Country Vintner's failure to market Rosemount wines to the three largest northern Virginia grocery store chains.  In its letter to Country Vintner, Rosemount alleged Country Vintner had "breached its obligation to use its best efforts to sell Rosemount Estates wine to <u>all</u> retail licensees throughout Virginia under our 1986 agreement . . . ."  (Emphasis in original).  The letter included a sixty-day "cure provision,"

which required Country Vintner to obtain "vendor status" with Giant, Safeway and Shoppers Food Warehouse retail stores in specific cities and counties in northern Virginia by January 11, 1997 in order to avoid termination of the Agreement. The letter also set forth specific quantities of wine that had to be sold to those stores within the cure period. Country Vintner made no effort to comply with the demands set forth in the letter and instead initiated a complaint with the ABC Board alleging that the proposed termination was without "good cause" as required by Code § 4.1-406 of the Virginia Wine Franchise Act.

A panel of the ABC Board determined that Rosemount did not have "good cause" to terminate the Agreement. The panel recognized Rosemount's right under the Agreement to require Country Vintner to market Rosemount wines to grocery stores in northern Virginia, but found that Rosemount had not communicated specific goals to Country Vintner prior to the November, 1996 letter and that it was "unfair and improper" to use the termination letter "to establish such goals." The panel ordered the Agreement remain in effect or that Rosemount pay Country Vintner reasonable compensation for the value of the Agreement.

The full Board reversed the panel decision on appeal and ruled that Rosemount had good cause to terminate its Agreement with Country Vintner. The Board held that Rosemount was not required to establish specific sales goals for the northern Virginia portion of the market and that Country Vintner had

failed to comply with the written terms found in the parties'
1986 Agreement.  The Board held:

> Despite continued requests from Rosemount
> Estates, Country Vintner has not made a
> significant effort to sell Rosemount
> products to the major Northern Virginia
> grocery chains.  The Board finds that
> Country Vintner has failed to substantially
> comply, without reasonable cause or
> justification, with the reasonable and
> material requests imposed upon it by the
> plain terms of the distribution agreement.
> Accordingly, the Board finds that good cause
> exists for the termination of the
> agreement . . . .

Country Vintner appealed to the circuit court, which
affirmed the Board's decision.  This appeal followed.

### ANALYSIS

In reviewing the decisions of a regulatory agency, the
agency's findings of fact are conclusive if supported by
substantial evidence.  Code § 9-6.14:17; Umbarger v. Virginia
Employment Comm'n, 12 Va. App. 431, 432, 404 S.E.2d 380, 381
(1991).  However, the issue of whether a winery had "good cause"
to terminate a franchise agreement with a wholesaler is a mixed
question of fact and law reviewable by this Court on appeal.
See Snyder v. Virginia Employment Comm'n, 23 Va. App. 484, 491,
477 S.E.2d 785, 788 (1996) (the determination of "good cause" is
a mixed question of law and fact); Umbarger, 12 Va. App. at 432,
404 S.E.2d at 381; Johnson v. Virginia Employment Comm'n, 8 Va.
App. 441, 447, 382 S.E.2d 476, 478 (1989).  We find that
Rosemount had "good cause" to terminate its Agreement with

Country Vintner under the Wine Franchise Act, Code § 4.1-406, and that the circuit court did not err in affirming the Board's decision.

The Wine Franchise Act, Code §§ 4.1-400 - 418, governs all contracts between wineries and wholesalers.  Code § 4.1-402. One of the stated purposes of the Act is "to prohibit unfair treatment of wine wholesalers by wineries, promote compliance with valid franchise agreements, and define certain rights and remedies of wineries in regard to cancellation of franchise agreements with wholesalers."  Code § 4.1-400(3).

Under the Act, a winery cannot terminate a franchise agreement with a wholesaler absent a showing of "good cause." Code § 4.1-406.  Code § 4.1-406 provides examples of events that constitute "good cause."  One such example, relevant to this case, provides that a winery has "good cause" to terminate if it can prove:  (1) the winery imposed a reasonable and material requirement on the wholesaler; (2) in writing; (3) with which the wholesaler failed to substantially comply; (4) without reasonable cause or justification.  Code § 4.1-406.  In addition to the enumerated causes, a winery can also rely on other "good cause" bases, provided the winery can show the cause is based on a "material deficiency" for which the wholesaler is responsible.

In this case, the Agreement between Rosemount and Country Vintner required, inter alia, that Country Vintner "contact all on-premises/off-premises retail licensees within [Virginia] at

reasonable intervals and use its best efforts to sell to them [Rosemount wines] in an aggressive, effective, and diligent manner."  As Country Vintner was the exclusive distributor of Rosemount wines in Virginia, Rosemount had the right to request that Country Vintner service the entire market.  Therefore, the requirement that Country Vintner use its best efforts to market Rosemount's wines to all retailers in Virginia was both "reasonable" and "material" to the exclusive distributorship relationship.

We reject Country Vintner's contention that the Agreement was unreasonable because it required Country Vintner to service all retailers in Virginia.  Country Vintner argues that if we find the requirement to be reasonable, then Rosemount could terminate the Agreement if Country Vintner failed to service even one retailer, a result Country Vintner alleges would be unfair.  However, Code § 4.1-406(4) requires only substantial compliance with the requirement; therefore, if Country Vintner was servicing all but a few retailers, it would be in substantial compliance with the requirement.

Country Vintner also contends this contract provision contravenes the Act's requirement that every term of any agreement be "reasonable."  Code § 4.1-418.  However, as discussed above, we find the contract term in question was reasonable.

The evidence establishes that Country Vintner intentionally bypassed 68% of the retail outlets in northern Virginia, and, therefore, failed to substantially comply with the written requirement imposed on it by Rosemount. Country Vintner's failure to distribute to a large percentage of the off-premises retail market in northern Virginia was due to its conscious decision to ignore the large retail grocery stores in the northern Virginia region and to focus its distribution on gourmet restaurants, discount houses, and club stores. The marketing strategy that it adopted was in direct contravention of the Agreement's requirements that it use its best efforts to distribute Rosemount wines to all retail outlets. Consequently, Country Vintner's decision to limit its marketing of Rosemount wines resulted in the absence of Rosemount wines in more than two-thirds of the northern Virginia off-premises wine market, a substantial portion of the overall market encompassed by the parties' Agreement.

Country Vintner argues that it fully complied with the Agreement because it sold large quantities of Rosemount wine to gourmet shops and restaurants. In essence, it argues that its record of success in other areas of the state precludes a finding of "good cause" to terminate. However, Country Vintner fails to consider the potential sales opportunity represented by the large grocery store retail market, which represents 68% of the northern Virginia market and fails to acknowledge

Rosemount's right to maximize its sales and exposure under the Agreement by requiring that its products be marketed to all retail stores. Country Vintner's decision to ignore 68% of the retail market in northern Virginia does not reflect Country Vintner's "best efforts" to market Rosemount wines "in an aggressive, effective and diligent manner," as required by the Agreement. Neither the Act nor the Agreement states that "good cause" for termination may be found only where the wholesaler has failed to meet an overall sales goal.

Country Vintner's explanation for its strategy falls short of a reasonable cause or justification for not complying with the requirements of the Agreement. Country Vintner claims that by imposing a requirement that Country Vintner sell to the three largest grocery store chains in northern Virginia, Rosemount was demanding that Country Vintner "embark on a new and risky sales effort." However, the evidence does not support this claim. Rosemount's request to market to grocery store chains in northern Virginia was not new. The parties' original Agreement specifically required that Country Vintner market to all retail outlets, and Rosemount made numerous verbal requests over a three-year period for Country Vintner to comply with the terms of the Agreement. Additionally, marketing to grocery stores was not a "new" effort for Country Vintner. The evidence shows that Country Vintner was selling Rosemount wines in grocery stores in southern Virginia and had, in fact, sold Rosemount wines in the

past to grocery stores in northern Virginia through a sub-contracted distributor. Therefore, the evidence belies Country Vintner's claim that Rosemount's request involved a "new and risky" sales effort.

We also find no merit in Country Vintner's argument that because Rosemount knew Country Vintner specialized in sales to gourmet shops and restaurants at the time they entered the Agreement, that such a request to service all retail outlets in Virginia was unreasonable. In the Agreement, Country Vintner specifically agreed that Rosemount's selection of Country Vintner as its distributor in Virginia was based on Country Vintner's representation that it "possesse[d] the necessary assets, personnel and management skills to effectively sell, distribute and handle" Rosemount wines in Virginia. Therefore, Country Vintner was required to comply with Rosemount's marketing plan, as described in the Agreement.

Country Vintner further contends the requirement to serve specific outlets is inconsistent with one of the Act's purposes, viz., to prevent suppliers from dominating local markets through vertical integration by maintaining a three-tier system for wine distribution in which the independence of wineries, distributors and retailers is preserved. The evidence fails to show, however, in what way Rosemount's requirement that Country Vintner comply with the Agreement and use its best efforts to market to all retail outlets erodes the three-tier system which

the Act is intended to protect. In fact, to the contrary, by not complying with the terms of the Agreement, Country Vintner was harming both the winery and the northern Virginia retail outlets. Country Vintner was the exclusive distributor of Rosemount wines in Virginia. Therefore, by making no effort to sell to the northern Virginia grocery stores, Country Vintner was denying Rosemount the opportunity to sell its product and denying the stores the opportunity to buy Rosemount wines. Country Vintner's failure to market Rosemount's wines also denied Rosemount the ability to compete with the other wine producers that market their product to the retailers that Country Vintner chose to ignore. The question is not one of unduly interfering with or dictating Country Vintner's marketing strategy; it is, rather, one of contract compliance. Nothing in the contract gave Country Vintner the right to limit its distribution to certain retailers, and a marketing effort directed at all retail outlets in Virginia was within the contemplation of the parties at the time they executed the contract.

Country Vintner also argues that the supply of wine from Rosemount was not sufficiently reliable to permit rapid expansion of its marketing efforts to the large retail grocery store outlets in northern Virginia. However, the Board found, as a factual matter, that Country Vintner had "chosen not to attempt any significant entry into the grocery store market."

This finding supports the conclusion that Country Vintner's decision to selectively market in northern Virginia, and not a lack of supply, led to its failure to market Rosemount's wines to the northern Virginia grocery stores.

We also reject Country Vintner's argument that if Rosemount was not satisfied with Country Vintner's performance in the northern region, Rosemount should have amended its Agreement with Country Vintner and assigned northern Virginia to another distributor. However, the Act does not require that the winery make such an amendment.

Finally, we find, contrary to Country Vintner's contentions, the Agreement was sufficient to constitute a "writing" under Code § 4.1-406.[2] The absence of a specific marketing plan or set of distribution goals for geographic areas in the Agreement does not render vague the Agreement's requirement that Country Vintner use its "best efforts" to market Rosemount wines to "all retailers" in Virginia. The written Agreement made clear what was required of Country Vintner and the numerous verbal requests made over a three-year period, which Country Vintner acknowledged receiving, further clarified the requirement.

---

[2] Code § 4.1-406 states that a winery may demand compliance with "any reasonable and material requirement imposed on [the wholesaler] in writing."

For the stated reasons, we find Rosemount had "good cause" under Code § 4.1-406(4) to terminate its franchise agreement with Country Vintner.[3]  Therefore, we affirm the circuit court decision.

<u>Affirmed.</u>

---

[3] Because we find that "good cause" existed under one of the enumerated examples set forth in Code § 4.1-406(4), we need not address Country Vintner's contention that a "material deficiency" for which Country Vintner was responsible did not exist.  Code § 4.1-406 ("Good cause shall not be construed to exist without a finding of a material deficiency for which the wholesaler is responsible in any case in which good cause is alleged to exist based on circumstances not specifically set forth in subdivisions 1 through 4 of this section.").