COURT OF APPEALS OF VIRGINIA

Present:   Judges Humphreys, Beales and Senior Judge Coleman
Argued at Richmond, Virginia


LOUIS LATOUR, INC.
                                                              OPINION BY
v.       Record No. 1836-06-2                       JUDGE RANDOLPH A. BEALES
                                                              MAY 29, 2007
VIRGINIA ALCOHOLIC BEVERAGE
 CONTROL BOARD AND THE COUNTRY VINTNER, INC.


FROM THE CIRCUIT COURT OF THE CITY OF RICHMOND
Theodore J. Markow, Judge

Michael J. Lockerby (Walter A. Marston; Kevin R. McNally;
Foley & Lardner LLP; Reed Smith LLP, on briefs), for appellant.

Carla R. Collins, Assistant Attorney General (Robert F. McDonnell,
Attorney General; Frank S. Ferguson, Deputy Attorney General;
K. Michelle Welch, Assistant Attorney General, on brief), for
appellee Virginia Alcoholic Beverage Control Board.

E. Duncan Getchell, Jr. (Stephen D. Busch; M. Stuart North; Erin M.
Sine; McGuire Woods LLP, on brief), for appellee The Country
Vintner, Inc.

*Amicus Curiae*:  Virginia Wine Wholesalers Association, Inc.
(Thomas A. Lisk; Jacqueline S. McClenney; LeClair Ryan, on brief),
for appellant.


Louis Latour, Inc. ("Latour") appeals a decision of the Circuit Court of the City of

Richmond, which affirmed a decision of the Virginia Alcoholic Beverage Control Board

("Board").  Specifically, Latour contends that the circuit court erred in failing to apply a *de novo*

standard of review, and in finding that Latour (1) unilaterally amended its agreement with The

Country Vintner, Inc. ("Vintner" or "TCV") without good cause; (2) discriminated among its

wholesalers in violation of the Virginia Wine Franchise Act ("VWFA"); and (3) acted in bad

faith in its dealings with Vintner.  For the following reasons, we affirm the judgment of the circuit court.

## I.

### STANDARD OF REVIEW

"On appeal, we will review the evidence, and all reasonable inferences deducible therefrom, in the light most favorable to [Vintner], the party prevailing below." The Country Vintner, Inc. v. Rosemount Estates, Inc., 35 Va. App. 56, 60, 542 S.E.2d 797, 799 (2001).

## II.

### BACKGROUND

#### A.  Factual History

On December 10, 1990, Latour entered into a wine distribution agreement with The Country Vintner, Inc.  According to the agreement, Vintner would sell Latour's wine throughout the Commonwealth with a primary area of responsibility in Surry and Gloucester Counties.[1]  It was understood that Vintner was selling, and intended to continue selling, Latour wine in Northern, Central, and Eastern Virginia.[2]  Between December 1990 and April 2003, Latour permitted Vintner to order as much wine as it could sell throughout the Commonwealth.  And, from November 5, 1999 to April 3, 2003, Vintner was the only wholesale distributor of Latour wines in the Commonwealth.

---

[1] The original agreement was never distilled to writing.  However, forms filed with the Board in 1990 and 1997 indicate that Vintner's territory designation was Surry and Gloucester Counties.

[2] In 1990, two other distributors had written agreements to distribute Latour wines in Virginia.  Specifically, King & Roberts was authorized to distribute Latour wine in Charlottesville, and Virginia Imports had an agreement to distribute Latour wine in Northern Virginia.  In 1996, Virginia Imports and Vintner entered into a brand swap, and thus, Vintner acquired the Northern Virginia Territory.  Subsequently, King & Roberts sold its business to Broudy-Kantor.

In 2002, Latour sought to change its marketing strategy, and with the help of Charles Ducker ("Ducker"), Latour's new Southeast Manager of Sales, attempted to create a network of regionally based distributors. Specifically, Latour decided to appoint new distributors with primary areas of responsibility outside of Surry and Gloucester Counties. Latour planned to mail distribution agreements to three new distributors,[3] receive them back, and file the new territory appointments with the Board. Latour made these plans without alerting Vintner.

Latour entered into written distribution agreements with three new wholesalers, and on April 3, 2003, filed the appropriate forms with the Board. On April 18, 2003, Latour sent Vintner a new proposed distribution agreement. The proposed agreement designated Vintner's primary area of responsibility as Surry and Gloucester Counties and required certain performance measures. For example, it required Vintner to maintain, and file with Latour, detailed stock depletion reports.[4] In essence, Latour intended for this written agreement to replace the existing franchise agreement which existed "by virtue of prior designations, actions, understandings, and course of dealings" between Vintner and Latour.[5] Vintner refused to sign the agreement.

In response, Latour sent Vintner a Requirements Announcement ("announcement"), stating that it was "prepared as a unilateral amendment to the commercial relationship." The announcement incorporated all aspects of the proposed agreement and declared that it would

---

[3] The new distributors included Select Wines and Virginia Distributing.

[4] The depletion reports were to contain "the names and addresses of the retail licensees to which [Vintner] ha[d] sold the Latour wines during said month and the volume of sales of the Latour wines for that month."

[5] By acquiring agreements with the new distributors, Latour hoped to pressure Vintner into signing the new franchise agreement. The new distributors were subject to a written agreement, which included, among other things, the requirement for filing depletion reports. As such, Latour hoped to push Vintner into signing the agreement by indicating that the other wholesalers in the Commonwealth were subject to the same terms.

become effective ninety-one days after its receipt by Vintner. The announcement defined Vintner's sales territory as Surry and Gloucester Counties, and stated that Latour had no obligation to "support in any way" sales activities of Vintner related to retailers located outside of the defined territory. It further provided that Latour could "in its sole discretion allocate the Latour wines among distributors in any manner" that it deemed in the best interests of Latour. Vintner objected to all aspects of this announcement and, subsequently, filed a complaint with the Board.

After Vintner refused to sign the agreement, Latour began offering price discounts and marketing incentives to the new distributors, Select Wines and Virginia Distributing, and ceased offering any such opportunities to Vintner.[6] Latour gave the new distributors access to Vintner's confidential business records in order to facilitate the new distributors' marketing efforts. Latour also deliberately delayed the processing of Vintner's purchase orders, while almost immediately filling those from the new distributors, and, moreover, never filled two purchase orders submitted by Vintner.

## B. Procedural History

On August 6, 2003, Vintner filed an original complaint with the Board against Latour. The complaint alleged that Latour violated the VWFA by creating dual distributorships and by attempting to impose specific performance requirements on Vintner without good cause. On February 11, 2004, Vintner filed an amended complaint with the Board alleging that Latour acted

---

[6] We note that the record is unclear as to whether Latour failed to offer these price discounts and marketing incentives to Vintner in general, or just in relation to its sales outside of its primary area of responsibility. When questioned at oral argument, Latour's counsel could only indicate that Latour offered wine tasting events to the new wholesalers within their primary area of responsibility and that Latour did not offer Vintner the same events outside of its primary area of responsibility. However, the record does not contain any indication that Latour offered these services to Vintner within its primary area of responsibility. Based upon our standard of review, we will view this in the light most favorable to Vintner, the prevailing party below. See Rosemount, 35 Va. App. at 60, 542 S.E.2d at 799.

in bad faith and unilaterally amended its franchise agreement without good cause. A Hearing Panel ("Panel") heard the case over a seven-day period, and on March 21, 2005, issued an opinion finding that Latour: (1) violated the VWFA's dual distributorship provisions; (2) unilaterally amended Vintner's agreement with Latour without good cause because the "modification [of the agreement was] in direct contravention of the Act"; (3) discriminated among its wholesalers, in violation of the VWFA; and (4) acted in bad faith in its dealings with Vintner.

Latour appealed, and on November 29, 2005, the Board affirmed all but one portion of the Panel's decision. Specifically, "The Board concur[red] with the analysis and findings of the hearing panel on the issue of Latour's unilateral amendment of its agreement with TCV. It likewise concur[red] with the hearing panel on the issues involving unlawful discrimination between wholesalers and bad faith on the part of Latour." However, the Board reversed the Panel's decision with regard to Latour's alleged creation of a dual distributorship. The Board found that Vintner's "primary area of responsibility [was] Surry and Gloucester Counties, and therefore, Latour [had] not entered into a dual distributorship situation in [Vintner's] territory."

Latour appealed the Board's decision to the Circuit Court for the City of Richmond. On June 28, 2006, the circuit court affirmed the Board's final order, stating that it was "without error." Latour timely appealed to this Court.

III.

ANALYSIS

In reviewing the decisions of a regulatory agency, the agency's findings of fact are conclusive if supported by the evidence. Rosemount, 35 Va. App. at 62-63, 542 S.E.2d at 799; see also Code § 4.1-410 ("All proceedings under this chapter and any judicial review thereof shall be held in accordance with the Virginia Administrative Process Act (§ 2.2-4000 et seq.).").

Accordingly, "[t]he reviewing court may reject the agency's findings of fact only if, considering the record as a whole, a reasonable mind would necessarily come to a different conclusion." Johnston-Willis, Ltd. v. Kenley, 6 Va. App. 231, 242, 369 S.E.2d 1, 7 (1988).

However, "[a]lthough decisions by administrative agencies regarding matters within their specialized competence are 'entitled to special weight in the courts,'" id. at 244, 369 S.E.2d at 8, decisions which involve issues of statutory interpretation require "little deference" because the issue falls outside the agency's specialized competence, Sims Wholesale Co. v. Brown-Forman Corp., 251 Va. 398, 404, 468 S.E.2d 905, 908 (1996); see also Va. Imports, Ltd. v. Kirin Brew. of Am., LLC, 41 Va. App. 806, 821, 589 S.E.2d 470, 477 (2003). Said differently, "pure statutory interpretation is the prerogative of the judiciary." Id. Thus, we review an issue of statutory construction *de novo*. See Mattaponi Indian Tribe v. Dep't of Envtl. Quality ex rel. State Water Control Bd., 43 Va. App. 690, 707, 601 S.E.2d 667, 675 (2004).

## A. The Circuit Court and the Standard of Review

Latour argues that the circuit court erred in failing to apply the *de novo* standard of review in reviewing the Board's final order. Specifically, Latour argues that issues of statutory construction and the meaning of terms found in the VWFA are questions "which [fall] squarely [within] the province of the courts." We agree with the proposition that these issues are subject to *de novo* review by the courts, but we find that the record does not support Latour's contention that the circuit court failed to apply this standard of review.

We have long held that, "[a]bsent clear evidence to the contrary in the record, the judgment of a trial court comes to us on appeal with a presumption that the law was correctly applied to the facts." Yarborough v. Commonwealth, 217 Va. 971, 978, 234 S.E.2d 286, 291 (1977); Shenk v. Shenk, 39 Va. App. 161, 169, 571 S.E.2d 896, 900 (2002) ("A trial court is

- 6 -

presumed to apply the law correctly."); <u>Oliver v. Commonwealth</u>, 35 Va. App. 286, 297, 544 S.E.2d 870, 875 (2001) ("The trial court's judgment is presumed to be correct.").[7]

Here, the circuit court held, "Having reviewed and considered the record before the Board, this court is of the opinion that the decision of the Virginia Alcoholic Beverage Control Board is without error." Even though the circuit court did not explicitly set forth the standard of review in its holding, on appeal, we presume that in reviewing and considering the record, the circuit court used the appropriate standard of review. Moreover, during discussion with trial counsel, the circuit court acknowledged that it was "bound" by the facts as found by the Board. However, the circuit court also noted that such a deferential standard of review is "not true with regard to questions of law." Therefore, because the record does not contain "clear evidence to the contrary," we cannot say that the circuit court applied an incorrect standard of review.

## B. <u>Dual Distributorships</u>

Neither party appeals the Board's finding that Vintner's "primary area of responsibility [was] Surry and Gloucester Counties, and therefore, Latour [had] not entered into a dual distributorship situation in [Vintner's] territory." Instead, the parties disagree regarding the impact of this finding. Specifically, Latour argues that the Board's determination that "Latour lawfully appointed new wholesalers . . . is legally irreconcilable with the Board's adoption of the Hearing Panel's holdings that Latour nevertheless violated the WFA by engaging in unilateral amendment, bad faith, and discrimination." In contrast, Vintner and the Commonwealth argue that the Board recognized "that the other findings do not depend upon the primary area of responsibility" and that those findings are "legally unassailable" in light of the Board's holding.

---

[7] Although in cases such as this, the circuit court functions as an appellate court rather than a trial court, the principle remains applicable.

Because neither party presents the issue of Vintner's "primary area of responsibility" on appeal, we will not address it. Accordingly, we are bound by the Board's decision that Latour had not created a dual distributorship, in violation of the VWFA, and that, according to the parties' agreement, Vintner's primary area of responsibility was Surry and Gloucester Counties. Therefore, we will approach the other issues on appeal in light of these uncontested facts.

## C. Unilateral Amendment and Good Cause

Latour contends that the circuit court erred in finding that it unilaterally amended its franchise agreement with Vintner without good cause, thereby violating Code § 4.1-406. Vintner responds that the evidence supports the finding that Latour unilaterally amended the franchise agreement without good cause, and the fact that Code § 4.1-404's prohibition of the establishment of dual distributorships was not violated does not contradict that finding. For the reasons that follow, we affirm the circuit court on this issue.

## 1. Unilateral Amendment

Initially, we note that the VWFA does not preclude a winery from proposing changes to the contractual relationship with its distributors, and we would certainly not uphold the imposition of any sanctions on a winery for solely proposing changes to its contractual relationship with its distributor. To do so would be contrary to the VWFA. In the absence of an agreed upon change (i.e., a bilateral amendment), however, the VWFA also provides a framework for unilaterally amending an existing agreement. See Code §§ 4.1-406 and 4.1-407. According to that framework, a winery may not unilaterally amend a contract without good cause. Id.

- 8 -

In this case, the Panel explicitly concluded that Latour's actions "constitute[d] a unilateral change or modification of an agreement without good cause."[8]  In reaching this conclusion, the Panel noted that Vintner "objected to <u>all</u> aspects of the Requirements Announcement.  Consequently, it was not implemented by Louis Latour as to TCV."  Latour contends this sentence constitutes a finding that the amendment was not actually implemented and that, therefore, "the issue of the propriety" of the announcement "has been rendered moot."  This claim, however, completely overlooks the Panel's other numerous findings and explanations that Latour had indeed unilaterally amended the franchise agreement, emphasizing one phrase over the vast majority of the Panel's opinion.

The Panel, after noting that Latour did not implement the proposal "as to" Vintner, immediately then, however, found:

> However, Louis Latour *delayed orders placed by [Vintner]* and assisted the other distributors by granting them price breaks and other incentives not offered to [Vintner] in order to enable them to compete against [Vintner] . . . .

> \*   \*   \*   \*   \*   \*   \*

> [The new distributors] had already been told by Mr. Ducker [Latour's Southeast Manager of Sales] that Louis Latour *intended to limit [Vintner's] supply of wine in order to restrict [Vintner's] distribution of Latour wine to Surry and Gloucester Counties.*  Mr. Retornaz also testified that this was Louis Latour's *intention.*  This is directly contrary to the provisions of Section 404 of the Act in that such a scheme restricted the sales of Latour wine by [Vintner] to retailers located within Surry and Gloucester Counties.

> \*   \*   \*   \*   \*   \*   \*

---

[8] While the dissent questions our examining Latour's actions subsequent to Vintner's receipt of the requirements announcement (i.e., the unilateral amendment), we nonetheless find it necessary to address those actions given the Board's factual findings, which Latour challenges on appeal.  With that in mind, we feel we must address Latour's question presented of whether or not Latour unilaterally amended, without good cause, its existing agreement with Vintner by imposing the requirements announcement.

In the case herein, Louis Latour's primary objective, in attempting to force [Vintner's] signing of the Distribution Agreement and complying with the Requirements Announcement, was *to limit [Vintner] from selling Latour wines outside of what Louis Latour considered [Vintner's] primary area of responsibility*. This is in direct contravention of Section 404 of the Act and makes this case easily distinguishable from Schieffelin. If anything, Schieffelin supports [Vintner's] contentions in this case. [Vintner] had been the sole distributor for Latour wines in Virginia from 1999 to April 2003. The plan or scheme conceived by Louis Latour was to enable other distributors to distribute Latour wines in areas of Virginia formerly serviced by [Vintner] pursuant to a longstanding agreement and *to limit [Vintner's] distribution to Surry and Gloucester Counties. This, in the Hearing Panel's view, constitutes a unilateral change or modification of an agreement without good cause.* Good cause cannot exist when the unilateral change or modification is in direct contravention of the Act.

(Emphasis added.)

Latour clearly could not implement *all* of the provisions of the requirements announcement because it was impossible for them to implement the provisions that required Vintner to act. Latour could not unilaterally have Vintner furnish the depletion reports – only Vintner could perform that provision. Moreover, the requirements announcement, i.e., the unilateral amendment, contained more provisions than just the requirement for depletion reports. Paragraph 1 of the requirements announcement stated, in part:

Retail licensees located in such Primary Area of responsibility shall be considered by Supplier and Distributor as the target market to which Distributor's obligation under this contract shall be focused; moreover, Supplier shall have no obligation to facilitate or support in any way . . . any activities in which Distributor chooses to engage relating to retail licensees located outside the Territory.

Latour implemented as much of this provision as it possibly could unilaterally. For example, Latour limited Vintner's ability to sell outside of Surry and Gloucester Counties – in parts of Virginia that were not part of the other distributors' primary areas of responsibility where Vintner had previously been distributing wine -- by refusing to follow previous shipping

- 10 -

arrangements that were part of the existing franchise agreement between Latour and Vintner. This is exactly the type of behavior that Code § 4.1-406 was enacted to prevent. See Code § 4.1-400(3), (4).[9]

To find that Latour proposed, but did not implement the amendment would provide suppliers with an easy loophole to Code § 4.1-406. A supplier could propose an amendment that includes a part that can only be implemented by the distributor, such as depletion reporting, and then implement whatever other provisions it sees fit without violating the statute, since the entire proposal has not been implemented. We find such an interpretation contrary to the purpose of Code § 4.1-406. Therefore, while the Panel's *preliminary finding* that Latour did not implement the proposed amendment to the agreement "as to" Vintner is accurate (if inartfully worded), so also is the Panel's *conclusion* that Latour actually unilaterally implemented the portions of the announcement that it could -- on its own -- unilaterally implement.

Finally, the text of the announcement itself states that Latour's requirements announcement was, in fact, a unilateral amendment to the existing agreement. The announcement reads,

> The enclosed "Requirements Announcement" has been prepared as a *unilateral amendment* to the commercial relationship between Louis Latour Inc. and The Country Vintner Inc. It essentially incorporates all of the performance aspects of the proposed

---

[9] We expressly do not hold, as the dissent seems to state (and as we discuss *infra*), that the statute requires a winery, such as Latour, to assist a wholesaler in its efforts to distribute the winery's product in another wholesaler's primary area of responsibility. Such a requirement would create dual distributorships and would violate the statute's express prohibition against creating dual distributorships. The statute also does not require a winery to assist a wholesaler outside the wholesaler's own primary area of responsibility. However, as noted, the statute expressly allows a wholesaler to sell the winery's product outside of the wholesaler's primary area of responsibility (and prevents a winery from restricting the wholesaler to its primary area of responsibility). Furthermore, in this case, the existing franchise agreement required Latour to assist Vintner in selling outside of Vintner's primary area of responsibility. It is Latour's unilateral implementation of that proposed change to the existing franchise agreement with Vintner that violates the statute.

- 11 -

contract, those relating to the distributor's performance and those relating to Louis Latour Inc.'s performance.

(Emphasis added.) The announcement also states, "The effective date of the amendments contained in the Requirements Announcement is the 91st day following the date of receipt by The Country Vintner, Inc."[10] Consequently, Latour makes clear that it is unilaterally amending the existing franchise agreement via the requirements announcement, which notes that the unilateral amendment takes effect on "the 91st day following the date of receipt by The Country Vintner, Inc." Therefore, we affirm the finding that Latour unilaterally amended the parties' contract, and, in accordance with Code § 4.1-406, Latour must demonstrate that good cause existed for such a unilateral amendment.

## 2. Good Cause

We now turn to whether the record supports the finding that Latour unilaterally amended the parties' agreement without good cause, in violation of Code § 4.1-406.

Under the VWFA, a winery is permitted to impose requirements on a wholesaler by unilateral amendment, so long as the winery complies with the requirements set forth in the VWFA. Code § 4.1-406; Code § 4.1-407. Specifically, Code § 4.1-406 requires that "the winery first compl[y] with § 4.1-407 *and* good cause [must] exist[] for amendment, termination, cancellation, nonrenewal, noncontinuance or causing a resignation." (Emphasis added.) Code § 4.1-406 delineates the parameters of "good cause" as follows:

> Good cause shall not include the sale or purchase of a winery.
> Good cause shall include, but is not limited to the following:
>
> 1. Revocation of the wholesaler's license to do business in the Commonwealth;
>
> 2. Bankruptcy or receivership of the wholesaler;

---

[10] Code § 4.1-407(A) states, in pertinent part, "a winery shall provide a wholesaler at least ninety days' prior written notice of any intention to amend, terminate, cancel or not renew any agreement."

- 12 -

3. Assignment for the benefit of creditors or similar disposition of the assets of the wholesaler, other than the creation of a security interest in the assets of a wholesaler for the purpose of securing financing in the ordinary course of business; or

4. Failure by the wholesaler to substantially comply, without reasonable cause or justification, with any reasonable and material requirement imposed upon him in writing by the winery including, but not limited to, a substantial failure by a wine wholesaler to (i) maintain a sales volume or trend of his winery's brand or brands comparable to that of other distributors of that brand in the Commonwealth similarly situated or (ii) render services comparable in quality, quantity or volume to the services rendered by other wholesalers of the same brand or brands within the Commonwealth similarly situated. In any determination as to whether a wholesaler has failed to substantially comply, without reasonable excuse or justification, with any reasonable and material requirement imposed upon him by the winery, consideration shall be given to the relative size, population, geographical location, number of retail outlets and demand for the products applicable to the territory of the wholesaler in question and to comparable territories.

Nothing in this section shall be construed to prohibit a winery from proposing or effecting an amendment to a contract with a wine wholesaler in the Commonwealth provided that such amendment is not inconsistent with this chapter.

Good cause shall not be construed to exist without a finding of a material deficiency for which the wholesaler is responsible in any case in which good cause is alleged to exist based on circumstances not specifically set forth in subdivisions 1 through 4 of this section.

Upon review, "the issue of whether a winery had 'good cause' to [unilaterally amend] a franchise agreement with a wholesaler is a mixed question of fact and law." Rosemount, 35 Va. App. at 63, 542 S.E.2d at 799.

Latour argues that the unilateral amendment avoided dual distributorships, which are prohibited by Code § 4.1-404, and that, therefore, "Latour's amendment was in 'good faith' as a

matter of law."[11]  As previously stated, we review issues of statutory construction *de novo*.  See Mattaponi, 43 Va. App. at 707, 601 S.E.2d at 675.  Code § 4.1-404 states that "[e]ach winery which enters into an agreement with a wine wholesaler shall designate a sales territory as the primary area of responsibility of that wholesaler which is applicable to the agreement."[12]  However, Code § 4.1-404 also states that "the term 'primary area of responsibility' shall not be construed as restricting sales or sales efforts by a wine wholesaler exclusively to retailers located within the designated sales territory, and any agreement to the contrary shall be void."

The plain language of the statute commands that the winery "shall" designate a "primary area of responsibility" for the wholesaler.  Furthermore, the statute contemplates that, pursuant to the franchise agreement, the winery may not *restrict* the wholesaler's sales to that "area of responsibility."  Code § 4.1-404.  In other words, the winery may not limit the wholesaler to selling solely within its primary area of responsibility, nor may the winery qualify the wholesaler's sales territory as solely limited to that primary area of responsibility.  See Black's Law Dictionary 1317 (7th ed. 1999) (defining restriction as "a limitation or a qualification").

Of course, the statute does not require that the winery assist a wholesaler in its effort to distribute outside of the wholesaler's "primary area of responsibility."  However, in this case, the parties' franchise agreement did require Latour to assist Vintner outside of Surry and Gloucester

_____

[11] Code § 4.1-406 delineates the parameters of "good cause" to cancel or amend an existing agreement.  Appellant, however, uses the term "good faith" in its argument on this issue. The Virginia Supreme Court has explicitly noted the difference in the two terms as contemplated by that section.  See Sims Wholesale Co., 251 Va. at 405, 468 S.E.2d at 909.  Therefore, we will address the concept of "good cause" in this section and discuss the VWFA's provision that requires good faith in all dealings *infra*.

[12] Here, Latour designated Surry and Gloucester Counties as the primary area of responsibility for Vintner, certain cities and counties in Northern Virginia as the primary area of responsibility for Select Wines, and certain cities and counties in the Roanoke area, Central Virginia, and Eastern Virginia as the primary area of responsibility for Virginia Distributing Company.  No other areas of Virginia were designated as any wholesaler's primary area of responsibility.

- 14 -

Counties, and such assistance had taken place throughout the parties' course of dealing. In other words, while Code § 4.1-404 does not require that Latour assist Vintner with sales outside of its primary area of responsibility, the parties' existing contract did. Code § 4.1-404, rather than precluding such a contract provision, provides for such assistance by including the provision, "The term 'primary area of responsibility' shall not be construed as restricting sales or sales efforts by a wine wholesaler exclusively to retailers located within the designated sales territory, and any agreement to the contrary shall be void."

Here, Latour admitted before the Panel that it intended to limit Vintner to Surry and Gloucester Counties. Assisting new distributors, with whom they had recently signed contracts, in the areas outside each of the distributors' primary areas of responsibility (i.e., in areas of Virginia not assigned to any distributor and which were formerly serviced by Vintner), while disregarding Vintner's orders for sales in these same areas outside of any distributors' primary area of responsibility, were all attempts to limit Vintner's sales to only Surry and Gloucester Counties. While Latour is not *required* by statute to assist Vintner outside its primary area of responsibility and, in fact, cannot assist Vintner within another distributor's primary area of responsibility, Latour cannot *impede* Vintner's efforts and ability to sell outside its primary area of responsibility (while assisting other distributors in this "unclaimed territory"), which Latour clearly did.[13]

Latour's unilateral amendment was, therefore, intended to limit Vintner to its primary area of responsibility, in violation of Code § 4.1-404. Specifically, Latour intended to use the

---

[13] The Board's finding that Latour did not violate the prohibition on dual distributorships contained in Code § 4.1-404, see *supra*, does not contradict this finding. Code § 4.1-404 contains more than one provision. It both precludes wineries from assigning the same primary area of responsibility to two distributors *and* prevents wineries from limiting those distributors to their primary areas of responsibility. While Latour did not violate the first provision, it violated the second provision by its unilateral amendments to the contract with Vintner.

depletion reports from Vintner to limit its supply of wine and, therefore, its distribution territory. In addition, as the Panel noted:

> Latour delayed orders placed by [Vintner] and assisted the other distributors by granting them price breaks and other incentives not offered to [Vintner] in order to enable them to compete against [Vintner]. Louis Latour also gave the new distributors a letter of authorization to take to the retailers, in areas formerly serviced by [Vintner], announcing a change in the distribution network . . . .

In short, not only did Latour act without good cause, it also acted in bad faith as discussed *infra*.

Latour's actions towards Vintner both before and after Vintner's rejection of the proposed written amendment to their contract further establishes that Latour attempted to unilaterally amend the agreement with Vintner without good cause. Although Latour argues that the VWFA "anticipates and permits wineries to impose sales volume requirements and to make comparisons of product demand among sales territories" and "only by requiring depletion reports of their wholesalers can wineries make such comparisons," Latour does not offer evidence of any "material deficiency for which the wholesaler is responsible" nor does Latour argue that any of the examples of good cause enumerated in Code § 4.1-406 applies in this case. We thus affirm the finding of the Panel, the Board, and the circuit court on this issue.

### D. Discrimination

Latour contends that because the issue of discrimination is "hopelessly intertwined with the Hearing Panel's decision regarding the scope of Vintner's territory," the circuit court erred in finding that Latour discriminated against Vintner, in violation of Code § 4.1-415. For the following reasons, we disagree.

Code § 4.1-415 provides that "[n]o winery shall discriminate among its wholesalers in any business dealings including, but not limited to, the price of wine sold to the wholesaler, unless the classification among its wholesalers is based upon reasonable grounds." In general, discrimination is defined as "differential treatment; esp. a failure to treat all persons equally

- 16 -

when no reasonable distinction can be found between those favored and those not favored."

Black's Law Dictionary, supra at 479.  Thus, according to Code § 4.1-415, no winery may treat its wholesalers differently unless the winery has reasonable grounds to do so.

In this case, the record reflects that Latour offered direct import pricing, depletion allowances, and marketing activities to Select Wines and Virginia Distributing.  However, the record gives no indication that the same direct import pricing, depletion allowances, or marketing activities were offered to Vintner.  In essence, Latour allowed the new distributors to purchase the same wine at lesser prices, *compensated the new distributors following the sale of the wine*, and offered free wine to the new distributors.  After April 2003, none of these incentives were offered to Vintner.  Moreover, Latour made a conscious decision to immediately process the purchase orders from Select Wines and Virginia Distributing, while delaying or simply not fulfilling the purchase orders from Vintner, in order to allow the new distributors to sell more wine.  Thus, the record provides ample support for the Board's finding that Latour discriminated against Vintner in favor of other distributors.  Accordingly, we affirm the circuit court on this issue.

### E.  Good Faith

Latour argues that the circuit court erred in affirming the Board's finding that Latour failed to act in good faith, in violation of the VWFA.  For the following reasons, we disagree with this argument as well.

"Good faith" is a legal term of art, and thus on appeal whether a party acted in good faith is a mixed question of law and fact.  Again, we give deference to the factual findings of the Board and the Panel, but review the application of those facts to the law *de novo*.  See generally Rosemount, 35 Va. App. at 63, 542 S.E.2d at 799.

The VWFA requires that, "[e]very agreement entered into under this chapter shall impose on the parties the obligation to act in good faith." Code § 4.1-418. Although good faith is not defined under the VWFA, it is generally defined as "[a] state of mind consisting in (1) honesty and belief in purpose, (2) faithfulness to one's duty or obligation, (3) observance of reasonable commercial standards of fair dealing in a given trade or business, or (4) absence of intent to defraud or to seek unconscionable advantage." Black's Law Dictionary, supra at 701.[14]

In this case, Latour discriminated against Vintner, in favor of other distributors, in violation of the VWFA. Moreover, Latour provided confidential business information to the new wholesalers so that they could compete more effectively with Vintner in territories outside of Vintner's and their own primary areas of responsibility. Latour acknowledged that disclosing the information was wrong and that it did not condone such business practices. Regardless, Latour argues that because under Code § 4.1-404 a winery is not obligated to facilitate the wholesaler's activities outside of the primary area of responsibility, Latour's actions cannot, as a matter of law, constitute bad faith. This argument, however, ignores the fact that Latour's actions -- delaying and not filling purchase orders, offering incentives to all wholesalers except Vintner, and disclosing confidential business documents -- went far beyond simply not facilitating sales outside Vintner's primary area of responsibility. These actions applied to Vintner's entire business and affected its entire operation. Stated another way, Latour frustrated Vintner's ability to sell wine *anywhere* to *anyone* so that Latour's new distributors could gain a competitive advantage and, consequently, increase their market share.

---

[14] The Panel relied upon the Uniform Commercial Code, which defines good faith as "honesty in fact and the observance of reasonable commercial standards of fair dealing." Code § 8.3A-103; see Johnston v. First Union Nat'l Bank, 271 Va. 239, 244, 624 S.E.2d 10, 12 (2006).

Because Code § 4.1-418 requires that "[e]very agreement entered into under this chapter . . . imposes on the parties the obligation to act in good faith" and Latour clearly violated this obligation, we affirm the circuit court on this issue.

### F. Remedies

#### 1. Compensation under Code § 4.1-409

Latour argues that the circuit court erred in granting Vintner compensation in the form of the value of the agreement, pursuant to Code § 4.1-409, because "Latour had every right under the WFA to propose amendments without incurring liability," i.e., Latour had good cause to amend the parties' distribution agreement. We disagree.

Code § 4.1-409 provides that,

> in any case in which a winery is found to have attempted or accomplished an amendment, termination, cancellation, or refusal to continue or renew an agreement *without good cause* as defined in § 4.1-406, the Board shall, upon the request of the wholesaler involved, enter an order requiring that (i) the agreement remain in effect or be reinstated or (ii) the winery pay the wholesaler reasonable compensation for the value of this agreement as determined pursuant to subsection B.

(Emphasis added.) As we have held *supra*, Latour did not demonstrate good cause to amend the parties' agreement. Consequently, the remedy awarded pursuant to Code § 4.1-409 was appropriate, and we affirm the circuit court on that issue.

#### 2. Attorney's fees

Latour contends that because the circuit court erred in finding that Latour acted in bad faith, the circuit court also erred in awarding Vintner attorneys' fees, pursuant to Code § 4.1-410. According to Code § 4.1-410, "[t]he Board may, if it finds that the winery or wine wholesaler has acted in bad faith *in violating any provision of this chapter* or in seeking relief pursuant to this chapter, award reasonable costs and attorneys' fees to the prevailing party." (Emphasis

added.)  Because we find that Latour acted in bad faith in violation of Code § 4.1-418,[15] and because Code § 4.1-410 allows for attorneys' fees when a party acts in bad faith in violation of *any* provision of this chapter, we affirm the circuit court's decision to award attorneys' fees.

IV.

CONCLUSION

For the foregoing reasons, we hold that the circuit court did not err in applying the appropriate standard of review, in finding that Latour unilaterally amended the parties' agreement without good cause, in finding that Latour discriminated against Vintner, in finding that Latour acted in bad faith, in fashioning an appropriate remedy under Code § 4.1-409, and in awarding attorney's fees.  Accordingly, we affirm the judgment of the circuit court.

Affirmed.

---

[15] The Panel awarded attorneys' fees stating, "having concluded that Louis Latour acted in bad faith in its dealings with [Vintner], [Vintner] is entitled to its reasonable costs and attorneys' fees under Section 410 of the Act."  The circuit court held that Latour was obligated to pay Vintner "reasonable costs and attorneys' fees."

Humphreys, J., concurring, in part, and dissenting, in part.

I concur with the analysis and holding with respect to subsections A, B, D and F(2) of section III of the majority opinion that Latour acted in bad faith and discriminated against Vintner under the terms of their existing oral agreement. However, for the reasons that follow, I respectfully dissent from the analysis and holding of subsection C with regard to whether Latour attempted a unilateral amendment to the franchise agreement without good cause, in violation of Code § 4.1-404. Furthermore, because I would reverse the circuit court and the Board on that issue, I also partially dissent from the analysis and holding in subsection F(1) of section III of the majority opinion, and would remand to the circuit court with direction to remand to the Board to reconsider the issue of the appropriate sanction limited to the remaining issues.

## I. Unilateral Amendment

The primary point of my disagreement with the majority is with respect to the issue of whether Latour violated Code § 4.1-406 by attempting to amend its agreement with Vintner through the Requirements Announcement without good cause. The hearing panel found that,

> Latour's primary objective, in attempting to force [Vintner's] signing of the Distribution Agreement and complying with the Requirements Announcement, was to limit [Vintner] from selling Latour wines outside of what Louis Latour considered [Vintner's] primary area of responsibility. This is in direct contravention of Section 404 of the Act . . . . The plan or scheme conceived by Louis Latour was to enable other distributors to distribute Latour wines in areas of Virginia formerly serviced by [Vintner] pursuant to a longstanding agreement and to limit [Vintner's] distribution to Surry and Gloucester Counties. This in the Hearing Panel's view, constitutes a unilateral change or modification of an agreement without good cause. Good cause cannot exist when the unilateral change or modification is in direct contravention of the Act.

The majority affirms this decision holding that because Latour implemented as much of the requirements announcement that it could on its own — for example, refusing to follow "previous shipping arrangements"— Latour unilaterally amended the parties' agreement for which Latour

- 21 -

must demonstrate good cause. And because Latour's professed intention behind the requirements announcement was to limit Vintner to its primary area of responsibility, the attempted unilateral amendment to the agreement was done without good cause. I disagree with the majority and would reverse the Board on this issue.

Initially, I note that the majority has conflated the issue of Latour acting in bad faith with respect to its obligations under the *existing* agreement with the issue at hand. While acknowledging the Board's factual finding that "Latour did not implement the proposal 'as to' Vintner," the majority then promptly ignores that explicit finding, and holds that "It is Latour's unilateral implementation of the proposed change to the existing franchise agreement with Vintner that violates the statute." See Footnote 9. Moreover, contrary to the apparent view of the majority, the question before us is not whether the Board erred in holding that Latour's *actions subsequent* to Vintner's refusal to accept the requirements announcement constituted a unilateral amendment to the existing agreement without good cause. Instead, the question presented is whether the Board erred in holding that the *proposed requirements announcement* constituted a unilateral amendment to the existing agreement without good cause.[16] In my view, it did not.

---

[16] The majority characterizes the hearing panel's factual finding that Latour did not implement the proposed amendment to the agreement "as to" Vintner as nothing more than a "*preliminary finding*." The majority then asserts that the panel's "final conclusion" was that "Latour actually unilaterally implemented the portions of the announcement that it could — on its own — unilaterally implement." Characterizing an explicit finding of fact as "preliminary," and then substituting its own factual conclusion, is utterly revisionist on the part of the majority. In point of fact, the plain language used by the hearing panel, and later adopted by the Board and the circuit court, was that "Latour's primary objective, in attempting to force [Vintner's] signing of the Distribution Agreement and complying with the Requirements Announcement, was to limit [Vintner] from selling Latour wines outside of what Louis Latour considered [Vintner's] primary area of responsibility . . . . *This in the Hearing Panel's view, constitutes a unilateral change or modification of an agreement without good cause*." (Emphasis added.) In other words, and contrary to the characterization of the majority, the hearing panel found that Latour, *through the provisions in the announcement*, was attempting to limit Vintner to its primary area of responsibility, in direct contravention of the Code. And although the panel acknowledged that

Latour's announcement stated that, (1) "[r]etail licensees located in such Primary Area of responsibility shall be considered by Supplier and Distributor as the target market to which Distributor's obligation under this contract shall be focused;" (2) "Supplier shall have no obligation to facilitate or support in any way . . . any activities in which Distributor chooses to engage relating to retail licensees located outside the Territory"; and (3) "Distributor shall furnish monthly depletion and inventory reports for the Latour Wines to Supplier."  The requirements announcement also contained a provision stating, "Supplier shall supply the Latour Wines to Distributor in sufficient quantities to meet the demand for Latour Wines in the Territory.  If however, supply of any Latour Wines in [sic] limited, Supplier may, in its sole discretion, allocate the Latour Wines . . . in any manner that it determines to be in the best interest of Latour Wines."

Vintner argues, and the Board found, that these terms, when considered *in light of the course of dealings* between Vintner and Latour, amount to restricting Vintner to selling solely to retailers within the primary area of responsibility, in violation of Code § 4.1-404.  And because in the Board's view, the requirements announcement illegally restricted Vintner to its primary area of responsibility, the Board held that, "Good cause cannot exist when the unilateral change or modification is in direct contravention of the Act."

However, in affirming the circuit court and the Board on this point, the majority reaches a different issue from the one presented to us.  As the majority acknowledges, the Virginia Wine Franchise Act ("VWFA") clearly does not forbid a winery from merely proposing changes to the

Latour had delayed price orders and given the other distributors price incentives, *the panel never tied these facts to its finding regarding the unilateral amendment without good cause.*  And although I agree with the majority that we must "address those actions," in my view, they are more properly addressed in the context of discrimination and good faith with regard to compliance with the existing agreement.  They are not, however, properly addressed when determining whether the requirements announcement, *in and of itself*, constituted a unilateral amendment to the agreement without good cause.

- 23 -

contractual relationship with its distributors, as long as such changes are not unilaterally implemented except in compliance with the VWFA. Indeed, the VWFA specifically provides for such amendments, and the Board found — as a fact binding on this Court — that no unilateral implementation of the proposed amendments had occurred. See Code §§ 4.1-406 and 4.1-407.

In any event, Latour's announcement to Vintner proposing amendments to the existing agreement does not forbid Vintner from selling Latour products outside of Surry and Gloucester Counties, and in fact, would have been void had it done so. Rather, it simply relieves Latour from any responsibility to actively participate in or promote Vintner's efforts to sell outside of Vintner's primary area of responsibility. Moreover, it allows the winery to allocate its resources among distributors when quantities of a particular product may be low. Thus, in answer to the issue actually presented to us, I would hold that the proposed announcement, standing alone, did not violate Code § 4.1-404.

It seems to me that the chilling effect of the majority's approval of the Board's imposition of sanctions for merely proposing changes in a contractual relationship between a winery and its distributors, as distinguished from the sanctions that were appropriately imposed for the actions of Latour with respect to its existing agreement, frustrates rather than furthers the legislative intent of the statute. Specifically, Code § 4.1-400 clearly indicates that the legislative intent behind the VWFA was, in part, "To provide for a system of designation and registration of franchise agreements between wineries and wholesalers with the Board as an aid to Board regulation of the distribution of wine by wholesalers." By requiring a winery to facilitate a wholesaler outside of its designated primary area of responsibility, even pursuant to an existing franchise agreement, the majority runs afoul of the clear legislative intent to create a territorial system through which the Board can more easily regulate the distribution of wine throughout the

Commonwealth. Moreover, by doing so, the majority has in effect encouraged the *de facto* creation of a dual distributorship, in direct contravention of the VWFA. See Code § 4.1-404 ("No winery shall enter into any agreement with more than one wholesaler for the purpose of establishing more than one agreement for its brands of wine in any territory.").

## II. Good Cause

In light of the fact that I believe that the announcement did not violate Code § 4.1-404, I now turn to whether the remaining facts support the conclusion that Latour's attempted unilateral amendment to the agreement was without good cause, in violation of Code § 4.1-406. [17]

---

[17] Code § 4.1-406 delineates the parameters of "good cause" as follows:

> Good cause shall not include the sale or purchase of a winery. Good cause shall include, but is not limited to the following:
>
> 1. Revocation of the wholesaler's license to do business in the Commonwealth;
>
> 2. Bankruptcy or receivership of the wholesaler;
>
> 3. Assignment for the benefit of creditors or similar disposition of the assets of the wholesaler, other than the creation of a security interest in the assets of a wholesaler for the purpose of securing financing in the ordinary course of business; or
>
> 4. Failure by the wholesaler to substantially comply, without reasonable cause or justification, with any reasonable and material requirement imposed upon him in writing by the winery including, but not limited to, a substantial failure by a wine wholesaler to (i) maintain a sales volume or trend of his winery's brand or brands comparable to that of other distributors of that brand in the Commonwealth similarly situated or (ii) render services comparable in quality, quantity or volume to the services rendered by other wholesalers of the same brand or brands within the Commonwealth similarly situated. In any determination as to whether a wholesaler has failed to substantially comply, without reasonable excuse or justification, with any reasonable and material requirement imposed upon him by the winery, consideration shall be given to the relative size, population, geographical location, number of retail outlets and demand for the

- 25 -

Under the VWFA, a winery is permitted to impose requirements on a wholesaler by unilateral amendment, so long as it complies with the procedural requirements set forth in the VWFA. Code § 4.1-406; see Code § 4.1-407.[18] Specifically, Code § 4.1-406 requires that in order to impose a unilateral amendment upon the wholesaler, "the winery [must] first compl[y] with § 4.1-407 *and* good cause [must] exist[] for amendment, termination, cancellation, nonrenewal, noncontinuance or causing a resignation." (Emphasis added.)

Here, the Board found that Latour complied with the notice requirements as set forth in Code § 4.1-407. The Board also found that although the proposed agreement was never implemented, the proposed unilateral amendment to the existing agreement was intended to limit Vintner to its primary area, in violation of Code § 4.1-404. Thus, because the provisions violated the VWFA, Latour necessarily could not prove good cause existed to amend the agreement. Because the Board did not make any other factual findings with respect to its determination of good cause, and because I would hold that the proposed unilateral amendments alone did not violate the VWFA, I would reverse on this issue, and remand to the circuit court with

products applicable to the territory of the wholesaler in question and to comparable territories.

Nothing in this section shall be construed to prohibit a winery from proposing or effecting an amendment to a contract with a wine wholesaler in the Commonwealth provided that such amendment is not inconsistent with this chapter.

Good cause shall not be construed to exist without a finding of a material deficiency for which the wholesaler is responsible in any case in which good cause is alleged to exist based on circumstances not specifically set forth in subdivisions 1 through 4 of this section.

[18] Code § 4.1-407(A) states, in pertinent part, "a winery shall provide a wholesaler at least ninety days' prior written notice of any intention to amend, terminate, cancel or not renew any agreement."

instructions to remand to the Board for a review of the remedy consistent with this holding and

the results of any further proceedings before the Board.